229 F.Supp. 409 (1964)
MID-AMERICA TRANSPORTATION COMPANY, a corporation, Libelant,
v.
ST. LOUIS BARGE FLEETING SERVICE, INC., a corporation, Respondent.
No. 62A 402(1).
United States District Court E. D. Missouri, E. D.
February 25, 1964.
McMahon & Zempel, St. Louis, Mo., for libelant.
*410 Forrest Boecker, St. Louis, Mo., for respondent.
HARPER, Chief Judge.
The libelant, Mid-America Transportation Company, filed this libel against St. Louis Barge Fleeting Service, Inc., the respondent, on December 4, 1962, alleging that libelant had sustained damages to the sum of $5,245.25. Libelant alleged that such damages were caused solely by the fault, neglect, unseaworthiness and/or want of due care on the part of the respondent, who was acting as bailee for hire and/or custodian of said barge MAT-47 which is owned by libelant. At the close of the testimony offered by the libelant the respondent chose to stand on its motion to dismiss. The court reserved ruling on this motion and denied libelant's request to reopen the case.
Respondent contends that libelant has failed to sustain the burden of proof to sustain its claim for judgment. Respondent contends that this court lacks jurisdiction over the subject matter because this case does not properly come under maritime law. Respondent also contends that libelant failed to prove the creation of a bailor-bailee relationship between libelant and respondent. Respondent further contends that even assuming libelant has proven the creation of a bailment that libelant has failed to prove that the damage to the barge accrued after the barge was tied up in respondent's "fleet".
Libelant at the trial produced three witnesses: Willard B. Fouts, assistant general manager of libelant; William A. Howell, assistant to the manager of Missouri Barge Lines (Howell was the pilot on watch of the Motor Vessel Elizabeth Ann, which delivered the barge MAT-47 to respondent); and Joseph V. Holzmann, a marine surveyor and salvage master.
The evidence shows that the barge MAT-47 was owned by the libelant; that it was loaded with grain in St. Paul in November, 1960; and that it was transported down river by a tow boat (Motor Vessel Elizabeth Ann, owned by Missouri Barge Lines) chartered to the libelant, and at St. Louis, Missouri, was delivered to a fleet maintained by the respondent in St. Louis. The grain in the barge was owned by Cargo Carriers, and an arrangement had been made between Cargo Carriers and the libelant for the grain to remain on the barge until Cargo Carriers determined where the grain should be delivered. The barge MAT-47 was delivered to the respondent's fleet on November 23, 1960, upon the instructions of the dispatcher for Mid-America Transportation Company, the libelant. On December 29, 1960, Captain Fouts (assistant general manager of libelant) was informed that barge MAT-47 was aground in respondent's fleet. On January 9, 1961, Captain Fouts learned that Cargo Carriers (owner of the grain) was making plans to lighter the barge to get it off the ground. On that same date Fouts examined the barge MAT-47 and found that it had buckled.
Libelant's theory of jurisdiction, and the only possible basis for jurisdiction in this case, depends upon this being an admiralty matter. Respondent contends that the evidence shows a contract for dead storage, and therefore is not a subject of maritime law. Respondent cites Murray v. Schwartz, 2 Cir., 175 F.2d 72, and The Poznan, 2 Cir., 9 F.2d 838, 842, as authority. The court finds both cases to be inapplicable in this matter.
Maritime jurisdiction in cases of contracts depends chiefly on the nature of the service or engagement and is limited to subjects that are maritime and have respect to commerce and navigation. Ex parte Easton, 95 U.S. 68, 24 L.Ed. 373 (1877). It is clear that a contract for the use of a wharf, by the owner of a ship, is a maritime contract. Ex parte Easton, supra.
The evidence shows that the barge MAT-47 was never taken out of commerce but was detained in respondent's fleet, fully loaded, for future movement to its final destination. Libelant had fourteen barges delivered to respondent's fleet between November 18, 1960, *411 and November 23, 1960, and all of them had been removed from respondent's fleet by the end of January, 1961. It is evident that these barges were left with respondent only temporarily and were not taken out of commerce. This court has admiralty jurisdiction in this case.
Libelant did not offer proof of respondent's specific negligence, but relied on the theory that libelant and respondent had the relation of bailor and bailee. Assuming for the moment that libelant proved that respondent was the bailee of barge MAT-47, then libelant must further prove that respondent failed to exercise due care in the protection of the barge MAT-47. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110, 62 S.Ct. 156, 86 L.Ed. 89. See Johnson v. Cooper, 172 F.2d 937, where the Eighth Circuit Court of Appeals affirmed the trial court's findings and conclusions of law of a case determined on the principal that one who takes over personal property of another upon agreement to preserve it and restore it in as good a condition as when received is liable for the loss of the property so held by him proximately caused by his negligence. Whether libelant has sustained the burden of proving the breach of duty by respondent is partly determined by what inferences of fact he may summon to his aid.
The United States Supreme Court fully discussed what a bailor's burden of proof is in a case of this kind. In Commercial Molasses Corp. v. New York Tank Barge Corp., cited supra, 314 U.S. l. c. 111, 62 S.Ct. l. c. 161, the court stated:
"* * * the law takes into account the relative opportunity of the parties to know the fact in issue and to account for the loss which it is alleged is due to the breach. Since the bailee in general is in a better position than the bailor to know the cause of the loss and to show that it was one not involving the bailee's liability, the law lays on him the duty to come forward with the information available to him. (Citing cases.) If the bailee fails it leaves the trier of fact free to draw an inference unfavorable to him upon the bailor's establishing the unexplained failure to deliver the goods safely." (Emphasis added.)
The court in discussing what the bailee is required to do in order to avoid the unfavorable inference against him said at page 111 of 314 U.S., page 161 of 62 S.Ct.:
"* * * to go forward with evidence sufficient to persuade that the non-existence of the fact, which would otherwise be inferred, is as probable as its existence. It does not cause the burden of proof to shift, and if the bailee does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start."
The court must find whether or not a bailor-bailee relation existed between the libelant and respondent. Respondent contends that since the libelant was free, at any time, to take possession of its barge and remove it, that respondent never assumed control or custody of libelant's barge (a necessary requirement to establish a bailment). Such a contention is clearly erroneous. As a general rule, delivery by the bailor and acceptance by the bailee of the subject matter of the bailment creates the bailment (See 6 Am.Jur., 663). Of course, such delivery and acceptance must be made for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled or to otherwise deal with the goods according to the bailor's directions. See, e. g., Earhart v. Callan, 9 Cir., 221 F.2d 160, cert. denied 350 U.S. 829, 76 S.Ct. 59, 100 L.Ed. 740, where the court cited 8 C.J.S. Bailments §§ 1, 3, as authority for this general principle.
The evidence in this case shows that the barge MAT-47 was delivered on November 23, 1960, to the respondent *412 on instructions of the libelant. The barge MAT-47 was delivered to respondent for the purpose of being detained or held for future movement to its final destination. It is also clear that the respondent accepted the barge MAT-47. The Motor Vessel Barbara Bell (owned by respondent) assisted the libelant in mooring the barge (Tr. p. 40) and respondent's employees told Howell (the pilot in charge of the Motor Vessel Elizabeth Ann) where to tie off the barge. The testimony discloses that Fouts called respondent's office on January 6, 1961, after he was informed the barge was aground, and he was informed by Ford that respondent would get the barge off the ground. The facts clearly show that the libelant and respondent contemplated that the respondent was to have possession and control of the barge MAT-47 until the libelant directed otherwise. The court accordingly finds that the libelant and respondent relationship was a bailor-bailee relationship.
Respondent further contends that it did not have exclusive possession of the barge because Joseph Holzmann, surveyor and salvage master, who lightered the barge took charge of barge MAT-47 and its cargo at libelant's direction, without permission of the respondent. The testimony discloses that Holzmann took charge of the barge at the direction of the libelant and that when this occurred there were present a representative of Cargo Carriers (the owner of the grain, a representative of the libelant, and George Ford, a representative of the respondent. Holzmann was seeking to get some permission to lighter the barge, and after considerable conversation with the representatives of the three concerned, he told them that if action was not soon taken the damages would be very severe, and finally the general manager of the respondent told him to go ahead and get the job done. Holzmann further testified that he did not deem it necessary to get permission to commence his work from the respondent's representative, but that what he did and was doing was seemingly agreeable to the respondent. The testimony further discloses that respondent's representative furnished supplies and other items to Holzmann in his work of lightering the barge, evidencing the fact that libelant, respondent and Holzmann were working together to lighter the barge MAT-47. The fact that the respondent did not expressly give permission to Holzmann to lighter the barge under the circumstances here does not show that respondent was not the bailee of the barge.
Libelant sustained his burden of proof in proving that respondent was responsible for the damage to the barge MAT-47. The bailee failed to come forward with any evidence that might raise doubts to the validity of an inference unfavorable to the bailee. The evidence supports the finding that the barge MAT-47 was not buckled or damaged when it was delivered to the respondent. Howell testified that he knew of no incident on the trip from Minneapolis to St. Louis which would have damaged the barge (Tr. pp. 38 and 39). He further testified that they had a good trip and that they did not strike any objects, any bridges, or any underwater objects. Howell did not notice any particular or unusual thing about the loading or the way the barge MAT-47 rode in the water.
In view of the evidence discussed supra and the fact that the barge was unquestionably loaded evenly and properly and that if the barge had been damaged to the extent shown by the exhibits prior to delivery to the respondent someone probably would have noticed the same, the court finds that the barge was not in a damaged condition when respondent took control. Since the barge MAT-47 was not damaged upon delivery to respondent and since respondent failed to come forth with any evidence that might raise doubts in the court's mind that the barge might have been damaged in some way other than by respondent's negligence, the court finds that the respondent was responsible for the damage to the barge MAT-47.
*413 On the question of damages, the testimony shows that the libelant was damaged to the total sum of $5,095.52. Of this, $1,824.25 was for lightering service and $3,271.27 was for docking and repairs to the barge MAT-47.
The court accordingly finds for the libelant in the amount of $5,095.52.
This memorandum opinion will be adopted by the court as its findings of fact and conclusions of law, and the clerk will prepare and enter the proper judgment.