**MARTIN MARIETTA CORPORATION,**
**Plaintiff,**

v.

**PETER KIEWIT SONS' CO. and Slattery Associates, Inc., individually, and doing business as Peter Kiewit Sons' Co.–Slattery Associates, Inc. (Joint Venture), Defendants.**

**No. 71 Civ. 246.**

United States District Court,
E. D. New York.
July 13, 1972.

---

Thacher, Proffitt, Prizer, Crawley & Wood, New York City (Dwight B. Demeritt, Jr., Raymond S. Jackson, Jr., New York City, of counsel), for plaintiff.

Hill, Betts & Nash, New York City attorneys for defendants (Robert S. Blanc, David C. Wood, Edward H. Duggan, Jr., New York City, of counsel), for defendants.

RE *, Judge:

In this action, the libelant, Martin Marietta Corporation, (Martin), seeks to recover $54,289.02 representing damages sustained by its scows or barges, FEENY 20 and HB 130, when they broke adrift from their place of mooring at Rockaway, New York on April 2, 1970. The scows broke adrift while they were in the possession and control of the defendants, who, as a joint venture, were engaged in performing certain work on the Cross Bay Parkway Bridge being constructed in Jamaica Bay, Rockaway, New York.

Martin contends that the damage to the scows resulted from defendants' negligence, and therefore seeks to hold the defendants jointly and severally liable for the loss sustained. Simply stated, the question presented is whether Martin has succeeded in proving that the loss sustained was caused by the negligence of the defendants.

Martin sells crushed stone and transports it in scows to destinations designated by its customers. For this purpose, the scows are both transported and retrieved by tugboats hired by Martin. On the occasion in question, Martin was unable to proceed in its customary manner because various tugboat unions were on strike. Instead, since the defendants owned a tugboat whose crew were not members of a union on strike, Martin agreed to permit the defendants to transport the loaded scows to their construction site.

On February 6 and February 23, 1970 the scows, FEENY 20 and HB 130, were towed by defendants' tugboat to their construction site in Jamaica Bay. Defendants unloaded the scows and moored them at a wharf they leased from the New York City Park Department.

During the period when the scows were moored, Martin had one of its employees visit the construction site at least twice a week, and this employee had the opportunity to observe the condition of the scows and the manner in which they were moored.

On February 17 and March 6, 1970, Martin was notified that the scows had been unloaded, and were ready to be retrieved. On April 2, 1970, as a result of a severe storm, the scows broke away from their moorings, went adrift, and were damaged.

At the trial Martin's witness testified that the wind velocity, at the time in question, was approximately 26–30 knots with gusts of 33–40 knots. Although the defendants' evidence conflicted, and showed a wind velocity in excess of 50 knots, it is clear that the storm was of sufficient severity to wrench two mooring bits or cleats completely out of their concrete mountings.

At the outset, Martin seeks to establish the defendants' liability by asserting that the scows were improperly moored. Additionally, it asserts that "by virtue of the bailment . . . plaintiff is entitled to a presumption of the defendants' negligence upon proof of delivery in sound condition and the return of the scows in damaged condition." Consequently, Martin contends that, unless the presumption is rebutted by the defendant, it is unnecessary for Martin to offer any additional proof of negligence. Mid-America Transportation Co. v. St. Louis Barge Fleeting Service, Inc., 229 F.Supp. 409 (E.D.Mo. 1964), aff'd 348 F.2d 920 (8th Cir. 1965).

■ The defendants do not seem to deny that a bailment arose initially, but they argue that it was terminated before April 2, 1970, when the damage was sustained by the scows. They emphasize that Martin was notified to retrieve the scows prior to the accident. Since the defendants were unmistakably bailees, they were not absolved from liability merely because they notified Martin that it could recover the scows. This point was treated in the case of Mid-America Transportation Co. v. St. Louis

* Judge, U. S. Customs Court, sitting by designation.

Barge Fleeting Service, Inc. *supra,* where the court stated:

"Respondent contends that since the libelant was free, at any time, to take possession of its barge and remove it, that respondent never assumed control or custody of libelant's barge (a necessary requirement to establish a bailment). Such a contention is clearly erroneous". 229 F.Supp. at 411.

Moreover, in view of the tugboat strike it could hardly be said that the plaintiffs were free to retrieve their scows. Hence, the defendants' duty of care as a bailee continued until Martin had a reasonable opportunity to retrieve the scows.

The defendants also stress that Martin had its employee inspect the scows at frequent intervals after they were moored. This latter fact, the defendants contend, negates the element of exclusive control that is required to establish a bailment.

■ The fact that Martin's employee visited the construction site is not of itself determinative of either the existence of the bailment or the bailees' duty and liability. In Kenny v. City of New York, 108 F.2d 958, 959 (2d Cir. 1940), the City of New York interposed a similar defense. In the *Kenny* case the owner of a damaged scow also made frequent visits to ascertain its condition. The court nevertheless stated:

Possession of the scow passed to the City under a bare boat charter. The City had the right to move the scow from one location to another in the vicinity of the beach. By putting on board signs, fire extinguishers and lights the City recognized that the scow was in its possession and control even when fireworks were not being exhibited. Kenny's visits do not negative such control; he got permission to go aboard, and his interest as owner accounted for his intermittent attentions to the scow. The vessel was delivered to the City in good condition and was returned in damaged condition. These facts cast on the City the burden of going forward with evidence to prove that the damage was not due to lack of care on its part.

Cases where there is not a complete delivery of the vessel, as where the owner or his employee remains responsible, are not in point. See Stegemann v. Miami Beach Boat Slips, Inc., 213 F.2d 561 (5th Cir. 1954).

On the evidence presented it cannot be doubted that the defendants were bailees of the scows, and that the bailment relationship continued until April 2, 1970, when they broke adrift.

■ In view of the finding that a bailment existed, Martin is entitled to a presumption of negligence based upon its proof of delivery of the scows in sound condition, and their return in damaged condition. The presumption is a reasonable one since the bailee is in a better position than the bailor to know the cause of the loss. Once the loss has been established, the law places upon the bailee the burden of coming forward with evidence designed to rebut the presumption of negligence. If the bailee refuses or neglects to rebut the presumption, the trier of the facts is justified in drawing the inference that the loss was indeed caused by the bailee's negligence. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1943); Richmond Sand and Gravel Corp. v. Tidewater Construction Corp., 170 F.2d 392 (4th Cir. 1948); Gelb v. Minneford Yacht Yard, Inc., 108 F.Supp. 211 (S.D. N.Y.1952); Mid-America Transportation Co. v. St. Louis Barge Fleeting Service, Inc., 229 F.Supp. 409 (E.D.Mo. 1964), aff'd 348 F.2d 920 (8th Cir. 1965).

■ The rule is succinctly set forth in the case of Sisung v. Tiger Pass Shipyard Co., 303 F.2d 318, 321–322 (5th Cir. 1962). The court, in the *Sisung* case, stated:

The rule in bailment cases is that the bailee may overcome the inference of negligence arising against it because of delivery in good condition

and return in damaged condition by telling all that it knows of the casualty, and that it exercised ordinary care in all that it did with respect to the vessel. This burden, unlike that of persuasion which rested at all times on appellants, simply required appellee to go forward with evidence sufficient to show that it had no more knowledge of the cause of the casualty than was available to appellants and that it exercised ordinary care. At this juncture the burden of going forward would shift back to appellants to ultimately persuade the trier of the facts of negligence on the part of appellee proximately causing the casualty.

In the case at bar, the defendants have satisfactorily explained the events which led to the loss, and have overcome the presumption of negligence that arose against them as bailees. They have demonstrated, to the satisfaction of the court, that the scows were properly moored, and that they exercised due care throughout the duration of the bailment. The mooring was accomplished by the defendants' Marine Superintendent, a man with 37 years of experience in mooring and anchoring floating equipment including vessels such as the damaged scows. Under his supervision, each scow was secured with four lines and two cables appropriately placed.

The evidence reveals clearly that the scows were not set adrift because they were improperly moored. It is not disputed that two mooring bits were pulled from their mountings in the wharf. These same mooring bits had been successfully used by the defendants on numerous occasions since their installation in 1968, and Martin does not claim negligence in their construction or installation. The defendants, nevertheless, have introduced testimony that the concrete pier was a "substantial . . . very good pier", and that the bits, "secured in concrete, . . . were good bits." Surely this is not a case where the plaintiff has established that a wharfinger has supplied an inadequate or insecure bit or cleat. See Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc., 354 F.2d 476 (4th Cir. 1966).

Since the liability of a bailee is not that of an insurer, but must be predicated upon negligence, a bailor must prove the bailee's negligence, and that this negligence was the proximate cause of the damage or loss. M & J Tracy, Inc. v. Marks, Lissberger & Son, Inc., 283 F. 100, 102 (2d Cir. 1922).

From all the evidence it is clear that Martin has failed to sustain its burden of proof. It has not established that the scows were improperly moored, or that the mooring should have been accomplished in any particular way. Martin has merely introduced evidence as to the velocity of the winds on the afternoon of April 2, and argues that if the scows had been properly moored they would not have gone adrift. Regardless of the conflict of testimony as to the velocity of the wind and the intensity of the storm, absolutely no evidence was introduced to show that the scows had been improperly or negligently moored.

Moreover, the defendants proved that weather conditions, in the vicinity of the construction site on April 2, were not accurately forecast, and that neither the storm nor the intense winds were anticipated. Thus, even if a superior technique for securing the scows was feasible, the defendants were not negligent in having failed to employ it.

The conclusion is inescapable that the scows broke loose from their moorings, and were set adrift, as a result of the force and intensity of the storm which could not reasonably have been anticipated. See Chanler v. Wayfarer Marine Corporation, 302 F.Supp. 282 (S.D.Me. 1969).

Since Martin has not proven that the damages sustained by the scows were caused by the defendants' negligence, Martin cannot prevail in this action, and judgment is therefore given for the defendants.