**MIDLAND ENTERPRISES, INC., a corporation and the Ohio River Company, a corporation, Plaintiffs,**

v.

**NOTRE DAME FLEETING & TOWING SERVICE, INC., a corporation, Defendant.**

**No. 74–164A(3).**

United States District Court,
E. D. Missouri, E. D.

Sept. 25, 1975.

Elmer Price, Goldstein & Price, St. Louis, Mo., for plaintiffs.

Joseph M. Kortenhof, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This matter is before the Court for a decision on the merits. The case was tried to the Court sitting without a jury pursuant to normal admiralty procedure. The Court being fully apprised of the

premises hereby makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The plaintiff, Midland Enterprises, Inc., (hereinafter Midland) is a corporation organized according to law and was the owner of Barge OR328. The plaintiff, The Ohio River Company, (hereinafter Ohio River) was a corporation under law, and was the charterer and operator of Barge OR328.

2. Barge OR328 is a steel open hopper barge, raked at the bow and square-transom ended at the stern. It is compartmented into a bow and stern buoyancy compartment with four side or wing compartments, that are common to each other, side to side, under the cargo-hopper floor plate, in addition to the cargo compartment. The barge is 195 feet long, 35 feet in breadth with a 12 foot depth, and has a capacity of 1499 net tons at a 9 foot draft. Barge OR328 was a double skin barge, which means that there was an outer steel skin which acted as a hull, and an inner skin which consisted of the steel plate that enclosed the cargo-hopper.

3. Defendant, Notre Dame Fleeting & Towing Service, Inc., (hereinafter Notre Dame) is a corporation existing under law, and was the operator of the fleeting area in the St. Louis Harbor on the right descending bank of the Mississippi River known as the George Street fleet, and of the fleeting area in the St. Louis Harbor known as the Eagle fleet.

4. Barge OR328 was delivered to Notre Dame by the motor vessel Ovec, on or about February 28, 1973. Notre Dame delivered the barge to Peabody Coal Company for loading on March 3, 1973.

5. The loading of 1412 tons of coal by Peabody Coal was completed on March 5, 1973.

6. On March 5, 1973, Barge OR328 was picked up by the motor vessel Tom McConnell, owned and operated by Notre Dame, and was taken to the Eagle fleet, operated by Notre Dame.

7. At the time that Notre Dame put the barge into the Eagle fleet on March 5, 1973, its personnel inspected the barge and found it to be satisfactory and in good condition.

8. The barge was moved from the Eagle fleet to the George Street fleet by Notre Dame on March 5, 1973. On March 7, 1973, the barge was moved within the George Street fleet. The barge was moved back and forth between the Eagle and George Street fleets on March 8th and 9th, 1973.

9. A visual inspection by the crew of Notre Dame's harbor boats did not disclose any abnormality in connection with Barge OR328, but such inspection was not, and could not be, detailed or minute. There was no underwater inspection carried on in any respect by Notre Dame.

10. The services of harbor boats within the St. Louis Harbor area were contracted for by Notre Dame to check on all barges fleeted within the various Notre Dame fleets, including the George Street fleet where Barge OR328 was fleeted.

11. On or about March 10, 1973, Barge OR328 sank and was thereafter salvaged and taken by The Ohio River Company to its repair facility at Kingston Mines where permanent repairs were made.

12. After Barge OR328 was raised, it was determined that the hopper bottom plate contained numerous fractures which extended into the corresponding void compartments. This condition meant that water which leaked through the exterior hull would have entered the hopper compartment and then entered other compartments. Such a condition completely destroyed the double bottom integrity of the barge. Of the six watertight compartments on board the barge, none were water-tight.

13. A visual inspection after the barge was raised indicated that there were eleven small "weep" holes in the hull with the majority being on the starboard side.

14. When Barge OR328 was placed in dry dock, it was discovered that a ⅛th inch by 6 inches long fracture was on the bottom of the barge. The Court finds that this fracture was due to a puncture caused by the sinking barge settling upon a sewer outfall on the river bottom.

15. The Court finds that defendant Notre Dame exercised ordinary care at all times with respect to Barge OR328.

### Conclusions of Law

This Court has jurisdiction over the parties and the subject matter hereto pursuant to 28 U.S.C. § 1333.

The Court, in the present case at bar, was presented with a classic case of the law of bailment.

The failure of the bailee, in this case Notre Dame, to return the Barge OR328 after it had been bailed to Notre Dame raises an inference of negligence against the bailee, similar to the inference in the doctrine of res ipsa loquitur. *Commercial Corp. v. N. Y. Barge Corp.*, 314 U.S. 104, 113, 62 S.Ct. 156, 86 L.Ed. 89 (1941). Even though an inference of negligence is raised, the burden of persuasion still rests upon the plaintiff. The Court of Appeals for the Fifth Circuit has stated that:

The rule in bailment cases is that the bailee may overcome the inference of negligence arising against it because of delivery in good condition and return in damaged condition by telling all that it knows of the casualty, and that it exercised ordinary care in all that it did with respect to the vessel. This burden, unlike that of persuasion which rested at all times on appellants, simply required appellee to go forward with evidence sufficient to show that it had no more knowledge of the cause of the casualty than was available to appellants and that it exercised ordinary care. At this juncture, the burden of going forward would shift back to appellants to ultimately persuade the trier of the facts of negligence on the part of appellee proximately causing the cas-

ualty. *Sisung v. Tiger Pass Shipyard Co.*, 303 F.2d 318, 321–322 (5th Cir., 1962).

The above rule of law has been cited by numerous courts. *Gelb v. Minneford Yacht Yard, Inc.*, 108 F.Supp. 211 (S.D. N.Y., 1952); *Missouri Portland Cement Co. v. Universal Towing Co.*, 344 F.Supp. 1391 (E.D.Mo., 1972); *Martin Marietta Corp. v. Peter Kiewit Sons, Co.*, 346 F. Supp. 892 (E.D.N.Y., 1972).

In the instant case, a barge was delivered to a bailee, and for some unknown reason the barge sank. After a careful review of all the evidence, the Court is of the opinion that no explanation may be advanced for the sinking of Barge OR328.

 Such a situation as stated above raises an inference of negligence against defendant/bailee Notre Dame. It then falls to Notre Dame to prove that it exercised reasonable care in its bailee's duties towards the barge. This Court is of the opinion that the evidence shows that defendant Notre Dame exercised reasonable care while Barge OR328 was bailed to it. This showing of reasonable care, coupled with the record in this case which does not allow a determination to be made concerning the cause of the sinking, shifts the burden of going forward with the evidence to plaintiffs Midland and Ohio River.

To carry their burden of persuasion, plaintiffs have attempted to show the Court that the sinking of Barge OR328 was caused by the ⅛th inch by six inches puncture in the bottom of the barge. The Court finds that that puncture was caused by the sinking barge settling onto a sewer outfall on the river bottom and was not the cause of the sinking.

Since the bailee in this case has come forward with evidence enough to raise doubts as to the validity of the inference of negligence, which this Court as the trier of fact is unable to resolve, the bailor/plaintiff has not sustained the burden of persuasion. *Com-*

mercial Corp. v. New York Barge Corp.*, supra, 314 U.S. at 111, 62 S.Ct. 156.

The evidentiary record in this case, while complete, is unable to allow the Court to draw an inference as to the cause of sinking. The plaintiff has therefore failed to sustain the burden of proof resting upon it, and judgment must be entered for the defendant. *Commercial Corp. v. New York Barge Corp.*, supra, at 114, 62 S.Ct. 156.