MIDLAND ENTERPRISES, INC., a Corporation, and the Ohio River Company, a corporation, Appellants,

v.

NOTRE DAME FLEETING & TOWING SERVICE, INC., a corporation, Appellee.

No. 75–1819.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1976.

Decided August 16, 1976.

Rehearing and Rehearing En Banc Denied Sept. 10, 1976.

Elmer Price, St. Louis, Mo., for appellant.

Joseph M. Kortenhof, St. Louis, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Midland Enterprises, Inc. and The Ohio River Company brought suit against the Notre Fleeting & Towing Service, Inc., for damages suffered when a barge sank. Midland had chartered the barge to Ohio which, in turn, bailed it to Notre Dame. The barge sank while moored and under the control of Notre Dame. The District Court,[1] held that Midland and Ohio had failed to sustain their burden of proof as to the cause of the sinking and the negligence of Notre Dame. We affirm.

Notre Dame inspected and found the barge to be in satisfactory condition when it accepted delivery on March 5, 1973. It moved the barge five times within the harbor at St. Louis between that date and March 9, 1973. The barge sank in the harbor on March 10, 1973. Two theories were advanced at trial as to the cause of the sinking. Both depended upon the fact that the double-bottom integrity of the hull had been destroyed due to fractures in the bottom of the inner hull. Midland and Ohio argued that the barge sank due to a small gash in the outer hull which they maintained occurred during the period the barge was under Notre Dame's control. Notre Dame contended that the barge sank due to the gradual accumulation of water admitted through a number of weep holes in the outer hull which existed prior to acceptance of delivery. The existence of the weep holes could not have been discovered

through the inspection upon delivery. The court specifically found that the gash occurred when the barge was settling on the bottom after sinking. The expert testimony was divided as to whether the barge could sink because of the weep holes. The District Court held that it was unable to determine the cause of sinking.

█ Midland and Ohio also relied upon the rule that Notre Dame's failure to return the barge after bailment raised an inference of negligence on its part. *Commercial Molasses Corp. v. New York T. B. Corp.,* 314 U.S. 104, 111, 62 S.Ct. 156, 86 L.Ed. 89 (1941). The court held that Notre Dame had overcome this inference by coming forward with sufficient evidence to show that it had no more knowledge of the cause of the sinking than was available to appellants and that it had exercised reasonable care. Since the burden of persuasion ultimately rested with Midland and Ohio to establish negligence on the part of Notre Dame and the evidence would not permit the court to draw an inference as to the cause or responsibility for the sinking, it entered a judgment for Notre Dame. *See Sisung v. Tiger Pass Shipyard Co.,* 303 F.2d 318, 321–322 (5th Cir. 1962).

In essence, Midland and Ohio challenge the sufficiency of the evidence on appeal. They contend that the court erred in ruling: (1) that Notre Dame had introduced sufficient evidence to overcome the inference of negligence; and (2) that Notre Dame had exercised ordinary care.

█ The findings of a District Court sitting without a jury in admiralty are tested by the clearly erroneous standard. *Logan Charter Service, Inc. v. Cargill, Inc.,* 373 F.2d 54, 59 (8th Cir. 1967). We have carefully reviewed the record and, in our view, the trial court did not err in either respect.

Midland and Ohio argue that the court's determination that Notre Dame had overcome the inference of negligence was erroneous since Notre Dame failed to call the crew members of the vessels which handled

1. Honorable H. Kenneth Wangelin, United States District Court for the Eastern District of Missouri. Case below reported at 402 F.Supp. 848 (E.D.Mo.1975).

the barge while it was under Notre Dame's control. They suggest that the clear inference to be drawn from Notre Dame's failure to call such witnesses is that their testimony would be unfavorable. Hence, they contend that Notre Dame failed to go forward with evidence and negligence should have been inferred. *O. F. Shearer & Sons v. Cincinnati Marine Service, Inc.*, 279 F.2d 68 (6th Cir. 1960).

■ While it is well settled that the failure of a party to produce or account for important witnesses will permit the trier of fact to infer that their testimony would be unfavorable, the circumstances of this case do not compel the drawing of such an inference.

The cases cited by Midland and Ohio are simply not applicable to the present circumstances. They involved single dramatic catastrophes. For example, in *O. F. Shearer & Sons v. Cincinnati Marine Service, Inc.*, supra, the bailee harbor owner had thirty minutes notice of the fact that a large drift pile was coming downstream. The drift subsequently struck the plaintiff's barge which was moored in the harbor and said barge was damaged when it broke loose. The Court held that the failure of the harbor owner to call three of his employees to explain what they did in the period between notice and the event raised an inference that their testimony would be unfavorable. The inference that the employees' testimony would be unfavorable naturally arises out of the facts of the case. Such is not the situation here.

The evidence indicates that the barge gradually took on water over a period of days. The gradual loss of freeboard would not have been readily apparent over the period of time it took for the barge to sink. The amount of freeboard on a barge varies depending on the load it is carrying. The barge was virtually indistinguishable from numerous other barges. Consequently, it would be highly unlikely that a crew member would have noticed that there was anything particularly wrong with this barge.

Midland and Ohio had access to the logs of the vessels which were involved in handling and inspecting the barge. It is the duty of the crew to report any abnormalities to the captain who, in turn, notes the problem in the log. If nothing appears abnormal, then nothing is entered. The log was silent with regard to the barge.

Given the above facts, the inference that the testimony of the crew members would be unfavorable does not arise. Inferences are drawn to aid, not contradict, reason. *See Maggio v. Zeitz*, 333 U.S. 56, 65–66, 68 S.Ct. 401, 92 L.Ed. 476 (1947). The barge sank for reasons which neither party can account for and neither party had greater knowledge than the other.

■ We likewise find no merit in Midland and Ohio's contention that the court erred in holding that Notre Dame exercised ordinary care in safeguarding the barge. They argue that a watchman should have been employed to periodically inspect the moored barges, that a watchman would have discovered that the barge was sinking and that the failure to employ a watchman establishes that Notre Dame failed to exercise ordinary care.

The evidence showed that watchman services were provided by Notre Dame for specific barges at an additional fee if the company was informed that a barge required special attention and such services were requested. Notre Dame was neither informed that the barge required special attention nor was it requested to provide watchman services. The loss of the double-bottom integrity of the hull could not have been discovered by Notre Dame through ordinary inspection. In the absence of a request, inspection of the moored barges was conducted by the crews of four harbor vessels either owned or under contract with Notre Dame to provide such inspection. The duty of the crew member was to visually inspect the moored barges as the vessel went about the harbor and to inform the captain of any observed problems. The captain, in turn, would inform the company for action. We cannot say that the determination by the court that this inspection satisfied the standard was clearly erroneous under the circumstances of this case.

The decision of the District Court is affirmed.