614 F.2d 1186
 UNITED STATES of America, Appellant, Cross-Appellee,
v.
MOTOR VESSEL GOPHER STATE, her engines, tackle, etc., in
rem, and Midwest Towing, Inc., in personam,
Appellee, Cross-Appellant.
 Nos. 79-1401, 79-1436.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 4, 1979.
Decided Feb. 12, 1980.
 
 Allen VanEmmerik, Atty., Torts Branch, Civ. Div., Dept. of Justice, Washington, D. C., for appellant; Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Robert D. Kingsland, U. S. Atty., St. Louis, Mo., and Eloise E. Davies, Atty., Dept. of Justice, Washington, D. C., on the brief.
 Gary T. Sacks, Goldstein & Price, St. Louis, Mo., for appellee; Milton I. Goldstein, St. Louis, Mo., on the brief.
 Before HEANEY, BRIGHT and ROSS, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 This is an admiralty case brought by the United States for the cost of repairs to a lock on the Mississippi River resulting from a collision of a vessel with two miter gates within the lock.
 
 
 2
 On June 30, 1975, the Motor Vessel Gopher State and her tow, owned and operated by Midwest Towing, Inc. (Midwest), collided with and damaged two upper miter gates of Mississippi River Lock 25, located at Winfield, Missouri. Damage to such a structure results in liability without fault under the Rivers and Harbors Act of 1899, 33 U.S.C. § 408. The parties stipulated that $2,420 would be adequate to repair Gate No. 2, which suffered minor damage. Repairs to Gate No. 4, severely damaged, were estimated by the Army Corps of Engineers to be $99,959.61; actual costs claimed after the repairs were made amounted to $156,527.65. The district court awarded the United States $100,000 as the reasonable cost of repairing Gate No. 4; $2,420 as stipulated by the parties for damages to Gate No. 2; $1,000 as a penalty pursuant to 33 U.S.C. § 411 for hitting the gates; and prejudgment interest pursuant to Section 407.020 R.S.Mo.1969, at a rate of six percent. We affirm, but remand for a redetermination of the prejudgment interest.
 
 
 3
 On appeal, the United States contends that the district court erred: (1) in finding the actual costs of repair to be unreasonable to the extent that they exceeded the United States' estimated costs as to Miter Gate No. 4; and (2) in granting prejudgment interest mechanically at the six percent Missouri statutory rate rather than at a truly compensatory rate. Midwest cross-appeals challenging the award of prejudgment interest in any amount.
 
 
 4
 In an admiralty case, the findings of fact of a district court, sitting without a jury, may not be set aside unless clearly erroneous. United Barge Co. v. Notre Dame Fleeting & Towing Service, Inc., 568 F.2d 599, 602 (8th Cir. 1978); Midland Enterprises v. Notre Dame Fleeting & Towing Service, Inc., 538 F.2d 1356, 1357 (8th Cir. 1976). Factual findings are clearly erroneous only when unsupported by substantial evidence or based on an erroneous conception of the applicable law, Southern Illinois Stone Co. v. Universal Engineering Corp., 592 F.2d 446, 451 (8th Cir. 1979), or when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954), (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541-542, 92 L.Ed. 746 (1948)).
 
 
 5
 The district court held that the government failed to prove the reasonableness of the amount claimed above its original estimate for the repairs.[1] Although we disagree with the use of the estimate in ascertaining the award of damages, we cannot say that the district court's determination of the facts is clearly erroneous or is based on an erroneous conception of the applicable law. Substantial evidence supports those findings, which were based on the following evidence.
 
 
 6
 Pursuant to regulation and custom, the United States Corps of Army Engineers prepared a formal, detailed, and itemized estimate of the projected costs of repairing the damaged gates. That estimate was prepared by a civil engineer employed by the Corps of Engineers and was approved by the head of the Lock and Dam Section, the Chiefs of the Finance and Accounting Branch and Program and Development Offices, and the Corps' District Engineer. The estimate, based on the experience of the Corps of Engineers in repairing similar damage, reflected a cost of $91,668.00 as the cost of repair, plus an overhead charge of $8,291.61, for a total of $99,959.61 in estimated damages. A final bill of $157,402.15 was submitted to Midwest. Although the estimate correctly ascertained the amount of material and equipment needed to complete the project, it was highly inaccurate in determining labor and overhead charges.[2]
 
 
 7
 As the district court found, a comparison of the estimates with the final invoice reflects a gross disparity between the amount estimated and the amount claimed for both labor and overhead charges. Offsite labor hours were originally estimated at 3600 labor hours; the final invoice charged Midwest with 5409 hours of labor, which is an increase of 50 percent over the amount estimated. Accordingly, the cost of offsite labor was adjusted upward from $42,408.00 to $80,224.21. Overhead actually billed amounted to $53,421.32, a sum $45,129.71 or 544 percent greater than the amount reflected in the original estimate. This increase, ridiculous on its face, undoubtedly influenced the trial court in arriving at the proper figure to be allowed.
 
 
 8
 The government did not solicit bids from any private contractors to determine the amount they would have charged to repair the damaged gates, although it was authorized to do so and in fact had done so on past occasions. Evidence adduced at trial established that the miter gates could possibly have been repaired by private contractors for $100,000, provided they were removed from the lock by the Corps of Engineers. Further, a survey conducted on behalf of Midwest by a marine surveyor, Merrill Marine Services, Inc., mirrored the Corps' original computation of the estimates of costs of repair.
 
 
 9
 Based on this evidence, the district court found that the United States failed to meet its burden of proving that the sum of $157,000.00 constituted a fair and reasonable charge for the repairs to the damaged gates. Testimony was introduced to establish that miter repair job costs were sometimes greater than anticipated. However, the district court credited the testimony of two independent marine surveyors who stated that the labor charges were unreasonably high. Those surveyors were highly qualified and experienced in estimating such costs. In fact, one of the two independent marine surveyors testifying had previously been employed by the Corps of Engineers as an expert in a case involving similar lock damage.
 
 
 10
 In an effort to meet its burden of proving that the amount of labor charged was necessary to complete the job, the government called the Acting Chief of the Plant Branch of the St. Louis Corps of Engineers who testified that all labor charges could be accounted for as actually incurred by the Corps. However, the government failed to call as a witness the Corps' Chief of the Service Base Section, the individual in charge of supervising the labor devoted to the Gopher State job. Moreover, it offered no explanation as to why he was not called to testify to justify the increased labor costs. Midwest suggests that the inference to be drawn from the government's failure to call that witness is that his testimony would have been adverse to the government. We agree that this is a permissible inference. Although not conclusive, the "missing witness" rule in civil cases permits the court to draw an unfavorable inference from a party's nonproduction of an important witness. Midland Enterprises, Inc. v. Notre Dame Fleeting & Towing Service, Inc., supra, 538 F.2d at 1358. See also Clifton v. United States, 45 U.S. 242, 246, 11 L.Ed. 957 (1846).[3] Giving due regard to the opportunity of the district court to make credibility determinations, we conclude that these findings of fact as to the unreasonableness of the labor charges rest upon an adequate evidentiary basis and are not premised upon any misapprehension of the law. Since these findings are not clearly erroneous, they may not be set aside on this appeal.
 
 
 11
 The district court found the calculated overhead charges to be unreasonable and highly excessive. The final overhead charge was $53,400.00; it had been estimated at $8,291.61. Of this, $30,790.00 was considered "burden" and reflected overhead for offsite labor. The government made a general charge of district overhead in the amount of $20,591.41 in connection with the repairs to Miter Gate No. 4. That charge was calculated by totaling items such as the cost of repairs, such as labor, materials, vehicle rental, reproduction, plant and equipment and personnel travel. The total, $125,563.80, included some items of overhead already charged elsewhere. The overhead charges in the final bill were computed by applying a predetermined percentage of 16.89 percent, reflecting a pro rata share of the anticipated expense of operations during the coming year.
 
 
 12
 Although the government analogized overhead to factory costs and "burden" (the overhead for offsite labor in the amount of $30,790.00) to materials costs, it admits that "the former is part of the underlying cost to which the latter is applied." The district court found this additional overhead charge to be both arbitrary and "overhead on overhead." In essence, payment of this charge would result in double recovery which we believe the district court properly refused to consider.
 
 
 13
 The government contends that under United Electrical Workers v. Oliver Corp., 205 F.2d 376, 387 (8th Cir. 1953), it is entitled to general overhead costs. However, United Electrical involved a suit for damages for breach of a collective bargaining agreement resulting from the closing of its plant due to three illegal strikes. The court instructed the jury to award overhead damages only if they were specifically attributable to the shutdown and gave those instructions only after detailed testimony by cost accountants. Indeed, the instructions approved in United Electrical specifically provided for an award of overhead but only upon a determination of
 
 
 14
 what items of expenses were reasonably and properly allocable to such overhead and the fair and reasonable amounts of such allocable items. In making such determination you will exclude any items of overhead not reasonably necessary and any items of expense not properly allocable to such overhead.
 
 
 15
 Id. at 388 (emphasis added).
 
 
 16
 Testimony in this case revealed that a percentage of the overhead charges was applied to the miter repair job but that those charges were not specifically related to nor incurred as a result of the Gopher State job. In particular, the government failed to specify how the overhead calculated related to the costs of that job. As the district court found, "(t)he overhead charges were not based upon actual expenditures of overhead items related to the accident but were calculated under regulations promulgated by the Corps of Engineers and determined by the staff of the St. Louis District Corps of Engineers." United States v. Motor Vessel Gopher State, 472 F.Supp. 556, 558 (E.D.Mo.1979).
 
 
 17
 Increased overhead and indirect expenses are compensable, but only where there exists justification for awarding these costs. See, e. g., United States v. Commercial American Barge Line Co., 424 F.Supp. 453, 456 (E.D.Mo.1977). See also Canadian Pacific Railway v. United States, 272 F.2d 913, 918 (9th Cir. 1959); United Electrical Workers v. Oliver Corp., supra, 205 F.2d 376, 388 (8th Cir. 1953). It was the gross disparity between estimated and actual labor and overhead costs, unrebutted by adequate explanation for those increased costs, and the failure to show that the overhead arose "naturally from the particular breach," id., which influenced the district court's decision to limit the award of damages to an amount initially considered reasonable by the Corps as reflected in its estimate. Since this disparity was buttressed by the testimony of an expert admittedly used by the government to establish the cost of repairs in other instances of miter gate damage, we cannot say the trial court erred.
 
 
 18
 In admiralty suits, prejudgment interest is awarded in the discretion of the district court to insure compensation of the injured party in full and "should be granted unless there are exceptional or peculiar circumstances." Mid-America Transportation Co. v. Rose Barge Line, Inc., 477 F.2d 914, 916 (8th Cir. 1973). A court sitting in admiralty need not fix interest at the legal rate allowed in the state where it sits. Sabine Towing and Transportation Co. v. Zapata Ugland Drilling, Inc., 553 F.2d 489, 491 (5th Cir.), cert. denied, 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977) (12 percent); Sea-Land Service, Inc. v. Eagle Terminal Tankers, Inc., 443 F.Supp. 532, 534 (W.D.Wash.1977) (8 percent).
 
 
 19
 We believe the district court should, on remand, award prejudgment interest at a rate more in keeping with the interest rates prevailing at the time repairs were completed and at a rate of not less than 8 percent per annum.
 
 
 20
 Midwest contends that prejudgment interest should not be granted in this case because the United States' claim was unreasonably high compared with its estimate and because Midwest offered to settle the case for the amount eventually awarded by the district court. However, appellee's offer of settlement would be cause for denying prejudgment interest only if the United States was dilatory in bringing suit or if the suit was frivolous. Mid-American Transportation Co. v. Cargo Carriers, Inc., 480 F.2d 1071, 1074 (8th Cir. 1973); Mid-America Transportation Co. v. Rose Barge Line, Inc., supra, 477 F.2d at 916. Although the government did not prevail in its claim for damages, we do not consider this suit frivolous. More importantly, the appellee has had the use of the money during this period.
 
 
 21
 The judgment of the district court awarding the United States $100,000.00 as the reasonable cost of repairing the damages to Miter Gate No. 4 is affirmed and the case is remanded. On remand, the prejudgment interest rate should be increased in accordance with this opinion to at least 8 percent to reflect more realistically the interest rates prevailing at the time the repairs were completed.
 
 
 
 [1]
 The burden of proof was on the government to establish that the amount claimed was reasonable and that it fairly reflected the actual costs of repairing the gates. See, e. g., Isthmian S.S. Co. v. Jarka Corp., 100 F.Supp. 856, 860 (Md.Admiralty Div.1951)
 
 
 [2]
 Surprisingly, that estimate was prepared in the exact manner as was the estimate for the damage done to Miter Gate No. 2 involved in the same accident. The parties stipulated that the estimate prepared regarding Miter Gate No. 2 was wholly accurate as to the actual costs of repairing that gate
 
 
 [3]
 Although the district court did not specifically base its findings on the adverse inference to be drawn under such circumstances, its application nonetheless supports those findings