526 F.2d 242
 In the Matter of the Complaint of J. Russell FLOWERS, d/b/a
Flowers Transportation Company, for Exoneration
from, or Limitation of, Liability.
MASSMAN CONSTRUCTION COMPANY, Appellant,
v.
WAYNE B. SMITH, INC., Appellee.
 No. 75--1184.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 16, 1975.
Decided Nov. 25, 1975.
 
 F. Philip Kirwan, Kansas City, Mo., for appellant.
 Harry O. Moline, Jr., Clayton, Mo., for appellee.
 Before HEANEY, BRIGHT and WEBSTER, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 Massman Construction Company appeals from a judgment of the District Court[1] denying Massman's claim for damages against Wayne B. Smith, Inc. In the admiralty action below, Massman alleged that Smith negligently allowed Massman's barges to break away from Smith's wharf during a severe flood on the Mississippi River.[2] Smith denied that it was negligent and asserted that Massman's own negligence contributed to the breakaway.
 
 
 2
 Smith operates a quarrying business in Louisiana, Missouri, and maintains a dock adjacent to the quarry in order to load rock and sand onto its customers' barges. In early December, 1972, one of Massman's towboats delivered two of its barges to Smith's dock for loading.[3] As the river began to ice up, Smith loaded one of the two barges involved before receiving orders from Massman to stop loading.
 
 
 3
 In March, 1973, a Massman work crew performed various maintenance operations on the barges at Smith's dock. The work lasted for about three weeks. The District Court found that some of the barges were moved by Massman's crew during the maintenance work. Smith did not move the barges or make any adjustments to the lines after the work crew left.
 
 
 4
 By April, 1973, the Mississippi River at Louisiana was in a severe flood condition. Warnings were issued to mariners by the Coast Guard and the Corps of Engineers. Sometime between 9:30 and 10:30 p.m. on April 23, Gerald Smith, the general supervisor of the quarry, heard a loud noise. He drove to the water's edge but was unable to see anything due to haze. Because the river bank and Smith's dock were submerged, he could not get to the barges. He walked to a Missouri Farmers Association (MFA) dock upstream and asked if anyone had heard the noise. One employee replied that he had, but that he assumed it was an empty barge that had been bumping all day against the MFA dock. Gerald Smith then called the Corps of Engineers, reported the noise, and asked to have a towboat examine the river with its spotlight. The towboat did shine its light but saw nothing. At 2:25 a.m. on April 24, the two breakaway barges hit the dam at Lock and Dam No. 24 causing a total of $26,988.50 in damages. No one witnessed the breakaway.
 
 
 5
 The District Court rejected as speculative Smith's theory that the breakaway was caused by a barge which had broken loose from the MFA dock upstream. The court then held that where the use of a docking facility is for the mutual benefit of the dock owner as well as the owner of the vessel making use of the dock, both parties have a duty to exercise reasonable care under the circumstances.[4] The court concluded that the damage to the barges was caused by 'Massman's own lack of care, and not any want of care on the part of Smith.'
 
 I. Scope of Review
 
 6
 The existence and definition of the duties of the parties is an issue of law fully reviewable on appeal. Sidney Blumenthal & Co. v. Atlantic Coast Line R.R., 139 F.2d 288, 290 (2d Cir. 1943), cert. denied, 321 U.S. 795, 64 S.Ct. 848, 88 L.Ed. 1084 (1944). See also Stranahan v. A/S Atlantica & Tinfos Papirfabrik, 471 F.2d 369, 372--73 (9th Cir. 1972), cert. denied,412 U.S. 906, 93 S.Ct. 2293, 36 L.Ed.2d 971 (1973); Ellerman Lines, Ltd. v. The President Harding, 288 F.2d 288, 291--92 (2d Cir. 1961). Massman contends that the findings of the District Court that Smith was not negligent and that Massman was negligent are conclusions of law also fully reviewable on appeal.[5] However, this Circuit follows the majority rule that district court conclusions on negligence are reviewable under the clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Chicago & N.W. Ry. v. Minnesota Transfer Ry., 371 F.2d 129, 131 (8th Cir. 1967); Lewis v. Super Valu Stores, Inc., 364 F.2d 555, 556 (8th Cir. 1966). See generally 9 C. Wright & A. Miller, Federal Practice and Procedure § 2590 (1971). We review the findings here under that standard.
 
 II. Merits
 
 7
 The District Court held that both Massman and Smith were under a duty to exercise reasonable care under all the circumstances. We agree. Where the use of a docking facility is for the mutual benefit of the dock owner as well as the owner of the vessel making use of the dock, the duty to exercise reasonable care is imposed on both parties. Smith v. Burnett, 173 U.S. 430, 433, 19 S.Ct. 442, 43 L.Ed. 756 (1899). See Monsanto Co. v. Port of St. Louis Investments, Inc., 350 F.Supp. 502, 518 (E.D.Mo.1972), aff'd per curiam, No. 72--1689 (8th Cir., October 19, 1973); Valentine v. Pennsylvania R.R., 131 F.Supp. 108 (E.D.N.Y.1938), aff'd mem., 101 F.2d 1011 (2d Cir. 1939).
 
 
 8
 Since the relationship created by the parties was a bailment, see Stegemann v. Miami Beach Boat Slips, Inc., 213 F.2d 561, 564 (5th Cir. 1954), Massman argues that the court should apply a presumption of negligence and require the bailee, Smith, to explain the breakaway and show that the breakaway was not its fault. See, e.g., Erlbacher v. Republic Homes Corp., 263 F.2d 217 (8th Cir. 1959); O. F. Shearer & Sons v. Cincinnati Marine Service, Inc., 279 F.2d 68 (6th Cir. 1960). It is questionable whether such a presumption may be applied in this case since Smith may not have had the requisite 'exclusive control' of the barges because Massman's work crew made maintenance repairs on the barges in March. We will, however, assume arguendo that the presumption is applicable.
 
 
 9
 Application of the presumption does not mean that the burden of persuasion shifts from the bailor to the bailee. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110--11, 62 S.Ct. 156, 86 L.Ed. 89 (1941). The presumption only shifts the burden of the production of evidence. In order to meet this burden, Smith was required to show either (1) how the barges broke away and were damaged and that the breakaway and damage were not due to its negligence or (2) that it exercised reasonable care. Sisung v. Tiger Pass Shipyard Co., 303 F.2d 318, 321--22 (5th Cir. 1962); Richmond Sand & Gravel Corp. v. Tidewater Construction Corp., 170 F.2d 392, 393--94 (4th Cir. 1948); Consolidation Coal Co. v. United States Steel Corp., 364 F.Supp. 1071, 1074 (W.D.Pa.1973). See generally Annot.,65 A.L.R.2d 1228 (1959). The Supreme Court said in Commercial Molasses Corp. v. New York Tank Barge Corp., supra, 314 U.S. at 111, 62 S.Ct. at 161:
 
 
 10
 (I)f the bailee does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start.
 
 
 11
 Reviewing the record, we conclude that Smith produced sufficient evidence to meet its burden of production under either part of the test.
 
 
 12
 First, there was sufficient evidence to conclude that the breakaway was caused by the severe river conditions, by Massman's own negligence, or by a combination of these two causes. The river conditions caused other barges to break away from their moorings, and the barges were last tied off and secured by Massman's work crew after the maintenance work. We are satisfied that Smith adequately proved by substantial evidence that the breakaway was caused by reasons in no way connected with a lack of proper care on its part.
 
 
 13
 Second, Smith showed that it exercised ordinary and reasonable care under all the circumstances. Wayne Smith, the president of the business, examined the lines to the barges nearly every day. He looked closely enough to be able to determine that additional lines should be attached to some of the vessels tied to Smith's dock. Gerald Smith, the general supervisor of the quarry, went to the water's edge when he heard the loud noise. He was unable to see the barges because of a haze, but did go to the MFA dock to inquire as to what had happened. He also called the Corps of Engineers at Lock and Dam No. 24 and had them request a towboat to shine its spotlight on the river to see what, if anything, had happened. We cannot conclude that Smith, under the unusual circumstances involved in this case, failed to exercise ordinary care.
 
 
 14
 Smith having met its burden of explanation, it was incumbent upon Massman to show affirmatively that Smith was negligent. Sisung v. Tiger Pass Shipyard Co., supra, 303 F.2d at 322. Massman claims that Smith was negligent in that it did not attach additional lines to the barges, that it did not go out in a boat to examine the lines before the water rose to a point where such an examination was impossible, and that it allowed its dock light to remain out of service so that it could not examine the barges that night from its own dock. These arguments were considered by the District Court along with the substantial evidence that Smith exercised ordinary care under the circumstances. The District Court's conclusion that Smith was not negligent is not clearly erroneous.[6]
 
 
 15
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 The Honorable Roy W. Harper, Senior Judge, United States District Court for the Eastern District of Missouri
 
 
 [2]
 Massman's claim arose as a third party complaint in an admiralty action by J. Russell Flowers for exoneration from, or limitation of, liability when one of Flowers' barges broke away from a Missouri Farmers Association (MFA) dock in a severe flood. Massman initially filed a claim against Flowers claiming that Flowers' barge caused its barges to break away from Smith's dock. Massman then filed a cross-claim against MFA and followed that claim with this third party complaint against Smith
 
 
 [3]
 During this delivery process, Massman's deckhands would customarily tie the barges off using the lines attached to each barge. Smith would use its winches to move the barges while they were being loaded and in so doing would lower the barges downstream to await pickup by Massman's towboats, securing them with the same lines used by Massman to initially tie off the barges
 
 
 [4]
 The District Court indicated that Smith's duty could not continue indefinitely and that at a certain point Massman 'could not reasonably expect Smith's responsibility to continue * * *.' In view of our holding, it is unnecessary to pass upon this point
 
 
 [5]
 Massman cites two Second Circuit decisions, Mamiye Bros. v. Barber Steamship Lines, Inc., 360 F.2d 774, 776--78 (2d Cir.), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966), and Ellerman Lines, Ltd. v. The President Harding, 288 F.2d 288 (2d Cir. 1961), in support of its contention. The Second Circuit has, in contrast to this Circuit and the majority of the other circuits, maintained the position that a finding of negligence is not protected by the clearly erroneous rule. See generally 9 C. Wright & A. Miller, Federal Practice and Procedure § 2590, at 764--66 (1971)
 
 
 [6]
 The District Court also found that Massman failed to exercise adequate care. Since we agree with the District Court that Smith was not negligent, it is unnecessary to reach the issue of Massman's negligence