608 F.Supp. 142 (1985)
FEDERAL BARGE LINES, INC., a corporation, Plaintiff,
v.
GRANITE CITY STEEL, DIVISION OF NATIONAL STEEL CORPORATION and the Valley Line and Art's Fleeting Service, Inc., Defendants.
No. 82-1642A(5).
United States District Court, E.D. Missouri.
January 11, 1985.
*143 *144 John S. Sandberg, St. Louis, Mo., for plaintiff.
Gary T. Sacks, Samuel B. Murphy, Jr., St. Louis, Mo., Frank J. Dantone, Jr., *145 Greenville, Miss., Peter B. Hoffman, St. Louis, Mo., for defendants.

MEMORANDUM OPINION
LIMBAUGH, District Judge.
This matter was tried before the Court from June 27, 1984 through July 13, 1984. At the conclusion of plaintiff's case, the Court sustained defendant Valley Line's motion for a directed verdict on the plaintiff's complaint. The complaint was then dismissed against defendant Valley Lane. Defendant Art's Fleeting Service voluntarily dismissed its cross-claim against defendant Granite City Steel. The only cross-claim remaining is that of Granite City Steel against Valley Line. Thus, the case before the Court consists of plaintiff's second amended complaint against defendant Granite City Steel and Granite City Steel's cross-claim for indemnity or contribution against Valley Line.
On May 18, 1979, at approximately 9:00 p.m. Barge HTC-28, loaded by defendant Granite City Steel with 1,565 tons of coiled steel, sank while moored in the Granite City Steel piling fleet. Plaintiff brought this action for damages against defendant Granite City Steel, alleging negligence in the loading of Barge HTC-28. Defendant Granite City Steel has filed a cross-claim against defendant Valley Line alleging that defendant Valley Line had negligently rearranged barges moored in the piling fleet. Defendant Granite City Steel claims that defendant Valley Line, after removing a barge, retied the other barges in such a manner as to cause Barge HTC-28 to come in contact with other barges, thus incurring damage which resulted in the sinking.
After hearing the testimony of the parties' witnesses and upon careful consideration of all the evidence and briefs presented to this Court, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.
The Court finds that plaintiff Federal Barge Line, defendants Granite City Steel and Valley Line and Art's Fleeting Service are all corporations in good standing and within the jurisdiction of this Court. Plaintiff is the owner of the river barge HTC-28. Granite City Steel is the lessee and operator of a cargo loading and dock facility on the Chain of Rocks Canal in Granite City, Illinois. Granite City Steel also operates and makes available to barge owners fleeting space adjacent to its dock facility, commonly known as the Granite City Steel piling fleet. Valley Line is a barge line which owns and operates a number of harbor tugs, one of which is the M/V NAMOUR. Art's Fleeting Service is the owner and operator of several harbor tugs, including the M/V FORT YATES. Art's Fleeting Service provides harbor tug and fleeting services for various tenants of the Tri-City Regional Port District, of which defendant Granite City Steel is a tenant.
Barge HTC-28 is an open hopper barge of a vertically/transversely frame design. It has five storage compartments: raked bow, box stern and three wing tanks. The barge was built in 1965, thus about 14 years old at the time of the sinking. The Court further finds that the maintenance and inspection reports reveal a barge in questionable condition for loading and transporting bulk commodities such as coiled steel. The five months prior to the sinking depict a barge continuously leaking and in need of constant repair. The barge had sustained numerous fractures at various points along the frame and approximately 45 patches were used to repair temporarily these fractures and leaks. In fact, all repairs were temporary in nature because there is no report of drydocking during this period of time. The last report (prior to the sinking on May 18, 1979) was made on May 11, 1979. It indicated that there was water in all five compartments, areas of deterioration and "[b]arge heavily indented or washboarded. Corners starting to fracture. Covers and rails starting to deteriorate." There is no evidence that plaintiff attempted to pump out the water or make temporary or permanent repairs between May 11, 1979 and May 18, 1979.
*146 The Court further finds that on May 14, 1979, Granite City Steel placed an order for a barge with plaintiff. There is conflicting testimony as to the tonnage specified in the order. Plaintiff contends that defendant Granite City Steel placed an order for 1,400 tons of coiled steel whereas defendant Granite City Steel contends the order was for 1,565 tons. Plaintiff dispatched Barge HTC-28 from the Lesparance Street fleet on May 16, 1979. The tug M/V MARY BURKE towed HTC-28 to the Granite City Steel piling fleet and noted no problems during towage. The HTC-28 remained in the piling fleet from May 16 until the morning of May 17, when it was towed by the M/V FORT YATES to the Granite City Steel Dock for loading. The crew of the M/V FORT YATES noted no problems during towage.
As was its customary practice, the loading crew of defendant Granite City Steel made a visual inspection of HTC-28. This inspection consisted of a cursory check of the trim of the barge and the cargo hopper and did not involve checking the void compartments for leaks. No problems or leaks were reported to Mr. John Cole (general foreman in charge of loading) or to the plaintiff. Barge HTC-28 was then partially loaded with 97-98 coils by placing the coils at one end and continuing in a single pass to the other end. Where loading began in the cargo hopper is unknown. The barge was not reinspected after loading the 98 coils. The M/V FORT YATES then towed the barge back to the piling fleet where it remained until about 6-7:00 a.m. of May 18, 1979. At that time, the M/V FORT YATES returned HTC-28 to the loading dock. Again, no problems during towage were noted by the M/V FORT YATES. Loading resumed until about noon with additional 35-36 coils being placed in the barge. No inspection by Granite City Steel was conducted prior to this additional load. After the loading was completed, the barge was checked. Granite City Steel noted that the barge was in trim and had a draft of 9 feet, 6 inches. No leaking was noted. Once again the M/V FORT YATES towed the HTC-28 back to the piling fleet and no problems were noted during towing.
The Granite City Steel piling fleet is an non-supervised mooring area located approximately 50 feet from the Granite City Steel dock facility. The piling fleet area is leased by Granite City Steel but is utilized by other barge operators. Granite City Steel does not inspect or regularly check barges moored in the piling fleet, but will take affirmative action if an obvious problem occurs within the fleet.
On the afternoon of May 18, 1979, the HTC-28 was one of 13 barges in two tiers moored in the Granite City Steel piling fleet. The downstream tier had seven barges within it, and the upstream tier had six barges. HTC-28 was the fifth barge from the bank in the downstream tier. Shortly after the HTC-28 was placed in the piling fleet, the M/V NAMOUR arrived to remove a barge from the piling fleet. After removing the barge from the upper tier, a gap in the tier was created. Instead of rearranging the barges to fill in the gap, the barges were secured with lines but were placed at angles to one another in close contact. During the period the M/V NAMOUR was working the piling fleet, no problems with HTC-28 were noted. No other vessels entered the piling fleet after the M/V NAMOUR left.
At about 9:00 p.m. on May 18, 1979, large waves were noticed by Granite City Steel employees in the direction of the piling fleet. There was testimony that a loud popping noise was also heard. Examination of the piling fleet revealed that Barge HTC-28 had sunk. No one knows precisely what occurred, but the credible evidence indicates that the barge buckled and then sank.
Salvage operations began May 26 and continued until June 28, 1979. The HTC-28 was eventually raised and drydocked. There was difficulty in removing the steel coils and several coils were dropped back into the barge during attempts to lift them with a magnet. Of the 134 coils originally loaded, 129 were removed and some of *147 these were badly damaged and/or had to be scrapped.
The drydock examination revealed that the barge had buckled near the bulkhead between the No. 1 and 2 wing tanks. The barge had also sustained a large hole in the port bow. There is conflicting testimony as to whether this was a fresh hole or an enlargement of an old fracture. Whether new or old damage, the Court finds that the hole, in and of itself, was not large enough to cause the barge to sink. The credible evidence indicates that the hole could not have been the sole cause for the sinking but was in all probability a contributing factor.
The Court further finds that plaintiff's suggested loss may not be fair and accurate. Plaintiff is only entitled to recover those losses directly attributable to the sinking. There is a dispute as to plaintiff's payment of Weirton Steel Division's cargo claim under its bill of lading, the use of Art's Fleeting Service to transport plaintiff's surveyor to and from the salvage site instead of the salvor, who customarily provides such service for free, and the salvage contract price. Defendant Granite City Steel also pleads for a reduction of the repair bill paid to Louisiana Dock.
This is an admiralty and maritime claim within the meaning of Rule 9(h), Federal Rules of Civil Procedure and this Court has jurisdiction thereof pursuant to 28 U.S.C. § 1333.
Plaintiff seeks to impose liability upon defendant Granite City Steel on one of two propositions, based primarily on a bailment theory. Either Barge HTC-28 was leaking at the time of loading and defendant Granite City Steel failed to discover this condition or the barge was not leaking and Granite City Steel improperly loaded HTC-28. Defendant Granite City Steel counters both of these propositions of liability by avering that HTC-28 was unseaworthy in the first place and regardless of that fact, defendant Granite City Steel was not a bailee and therefore had no mandatory legal duty to inspect HTC-28 for leakage or keep a watch over it until it was re-delivered to plaintiff. Defendant Granite City Steel further contends that defendant Valley Line, if not sole tortfeasor, is a contributing tortfeasor, because it negligently rearranged the piling fleet and created the risk that HTC-28 incurred damage due to close contact with other barges. Defendant Valley Line disputes this allegation.
In an admiralty case such as this one, there are two evidentiary burdens operating. Midland Enterprises v. Notre Dame F. & T. Serv., 538 F.2d 1356, 1357 (8th Cir.1976); In re Matter of Flowers, 526 F.2d 242, 244 (8th Cir.1975); Sisung v. Tiger Pass Shipyard Co., 303 F.2d 318 (5th Cir.1962). Plaintiff relies on the rule that defendant Granite City Steel's failure to return the barge after bailment raises a presumption of negligence. See, Commercial Molasses Corp. v. New York T.B. Corp., 314 U.S. 104, 111, 62 S.Ct. 156, 161, 86 L.Ed. 89 (1941). Defendant has the burden of coming forth with evidence as to how the barge sank and that the sinking was not due to its sole negligence and that Granite City Steel exercised reasonable care during the bailment. Midland, at 1357; Matter of Flowers, at 244-245. The burden of persuasion, though, remains with the plaintiff to show that defendant Granite City Steel was in some manner negligent and thus proximately caused HTC-28 to sink.
Under maritime law, a barge owner has the duty to furnish his barge (for loading) in a seaworthy condition. The Southwark, 191 U.S. 1, 24 S.Ct. 1, 48 L.Ed. 65 (1903). The test for seaworthiness is whether the vessel is reasonably fit to carry the particular cargo which it has agreed to transport. The Southwark, at 9, 24 S.Ct. at 3. The Silvia, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241 (1898). The issue of seaworthiness is a question of fact to be decided by this Court. Dravo Mechling Corp. v. Standard Terminals, 557 F.Supp. 1162 (W.D.Penn.1983). Although defendant Granite City Steel contends that the evidence that HTC-28 sank in fair weather and calm waters, is prima facie proof that the barge was unseaworthy, such evidence *148 is only one of several factors to be considered. See, Continental National American Group v. Valley Line Co., 420 F.Supp. 568, 569 (E.D.Mo.1976).
The credible evidence depicts Barge HTC-28 as a leaker. It was regularly taking on water and required constant pumping. The barge was covered with plate patches over weak spots and fractures in the hull. Barge HTC-28 had at least 25% plate wastage. Expert testimony agreed that a transversely framed barge is structurally weaker than a longitudinally framed barge and such weakness increases with age. Plaintiff's own experts agreed that an older transversely framed barge is not suited for loading with a large tonnage of cargo such as coiled steel.
Barge HTC-28's maintenance reports up to one week before the sinking show a heavily washboarded, indented and fractured barge. Messrs. Morgan, Beare, and Henshaw (all employed by plaintiff) testified that HTC-28 should have been drydocked and permanently repaired prior to the loading. Not only were permanent repairs not made but there is no credible evidence that the leakage noted on May 11, 1979 was ever pumped out. Plaintiff states it must have been because defendant Granite City Steel did not report leakage, but then again defendant Granite City Steel did not specifically inspect for leakage before loading. Finally, HTC-28 did sink in calm water during fair weather.
The Court concludes that a combination of factors including a propensity of the barge to leak, advanced age of the barge, poor overall physical condition, and an unsuitable barge structural design for a load of coiled steel between 1,400-1,565 tons, rendered HTC-28 to be unseaworthy at time of delivery to Granite City Steel for loading. This determination of unseaworthiness, in and of itself, does not resolve the problems for the unseaworthy condition was not the sole proximate cause of the sinking. Had HTC-28 not been loaded, it would not have sunk.
The Court holds that even if HTC-28 was unseaworthy for loading at the time of delivery, defendant Granite City Steel, the bailee, still had the burden of showing that it exercised reasonable care during the bailment and that its conduct at that time was not the proximate cause of the sinking of HTC-28. The Court finds from the weight of the credible evidence that Granite City Steel was negligent in loading HTC-28 in the manner it did, or for loading at all, without exercising reasonable care to check for leakage, which negligence contributed to the sinking of HTC-28.
Delivery of HTC-28 to defendant Granite City Steel for loading created a bailment. Ohio River Co. v. Peavey Co., 731 F.2d 547 (8th Cir.1984), reversing on other grounds 556 F.Supp. 87 (E.D.Mo. 1982); Matter of Flowers, 526 F.2d at 244; Dravo Mechling, at 1166; Continental Nat'l. Am. Gp., at 570; Mid-America Transportation Co. v. St. Louis Barge Fleeting Service, 229 F.Supp. 409, 411 (E.D.Mo.1964). The court in Mid-America addressed the same issue raised here by defendant Granite City Steel, that is since plaintiff was free and able at anytime to remove HTC-28 from the piling fleet, no bailment was created. Mid America held that "Such a contention is clearly erroneous. As a general rule, delivery by the bailor and acceptance by the bailee of the subject matter of the bailment creates the bailment." Id., at 411. A bailment obligates the bailee to exercise ordinary care to protect the subject of the bailment, (in this case the barge HTC-28.) Ohio River v. Peavey, supra; United Barge v. Notre Dame Fleeting and Towing, 568 F.2d 599, 602 n. 5 (8th Cir.1978); Matter of Flowers, at 244; Continental Nat'l. Am. Gp., at 570.
Even if the Court had not found a bailment was created, Granite City Steel would still be held to a duty to exercise ordinary care as a stevedore. Dravo Mechling, at 1166. The warranty of workmanlike service requires the stevedore to use the same care and diligence as an ordinary prudent and skillful person would use *149 in loading a barge under the same circumstances as present in this case. Dravo Mechling, at 1166 citing Ryan Stevedoring Co. v. Pan-Atlantic Steamship Co., 350 U.S. 124, 133-34, 76 S.Ct. 232, 237-38, 100 L.Ed. 133 (1956) and F.J. Walker Ltd. v. Motor Vessel "Lemon Core", 561 F.2d 1138, 1148 (5th Cir.1977). A breach of the stevedore's warranty extends liability for all foreseeable and proximate losses incurred as a result of the stevedore's negligence. Dravo Mechling, at 1166.
In the instant case, defendant Granite City Steel accepted delivery of Barge HTC-28 for the purpose of loading her with coiled steel. Defendant Granite City Steel failed to exercise due care in the loading of the barge. Defendant was aware of the age and design of the barge. The credible evidence indicates that the single pass method of loading is an acceptable loading method. The evidence was also consistent that this method was not preferable when loading an older transversely framed barge showing signs of deterioration like HTC-28. What is customary practice may amount to a failure to exercise reasonable care under the circumstances of a particular case. United Barge Co. v. Notre Dame Fleeting & Towing, 568 F.2d 599, 604 n. 8 (8th Cir.1978).
Defendant Granite City Steel was negligent in employing an improper loading method which concentrated the load at a single point in the barge instead of throughout the barge. This caused excessive stress points in a weakened hull. Such stress could and the Court finds here, did lead to the buckling of the barge. See, Continental Nat'l. Am. Gp., supra.
A failure to inspect the barge for leaks before and after loading also constituted negligence on the part of Granite City Steel. HTC-28 was a leaker and in all probability was taking on water while in Granite City Steel's custody. Although Granite City Steel was aware that plaintiff allowed only a draft of 9 feet, it loaded to a draft of 9 feet, 6 inches. This small discrepancy becomes significant when a barge has a history of leakage as did HTC-28. Granite City Steel admitted that it would be improper to load a leaking barge and that its usual practice was to report to the barge owner any leakage discovered or to pump out the water. HTC-28 was taking on water, albeit at a slow rate, and an inspection for leakage would have revealed this. Instead the over-loaded barge was left to sit, unattended, in the piling fleet.
As bailee, Granite City Steel had the duty to exercise reasonable care with regard to HTC-28. This reasonable care included checking the barge specifically for leakage, rather than just lifting the hatch-covers to look for water visually, which was the only thing done here. Periodic inspections should have been made while the barge sat for nine hours.
Granite City Steel contends that it has no watchmen overseeing the piling fleet and no harbor crew or boat available to maintain the fleet; therefore, it was not in a position to do anything if the HTC-28 was in trouble. The fact that Granite City Steel did not have the resources available to maintain the fleet, does not excuse it from liability. See, Ohio River Co. v. Great Lakes Carbon Corp., 562 F.Supp. 61, 64 (E.D.Mo.1982), remanded in part on issue of attorneys' fees 714 F.2d 65 (8th Cir. 1983).
The Court sustains Valley Line's motion for a directed verdict on Granite City Steel's cross-claim. Granite City Steel's evidence against Valley Line consisted primarily of a diagram of the piling fleet made by Art Heinreicher although the diagram was not based upon his first-hand knowledge of the piling fleet configuration. Even if the diagram was accurate, there is no credible evidence which supports a finding that any conduct by Valley Line with regard to the piling fleet configuration was the proximate cause of the sinking. The evidence supporting Granite City Steel's contention of liability against Valley Line is simply too speculative for the Court to make a finding of negligence on the part of defendant Valley Line which contributed to the sinking of HTC-28.
After a review of all the evidence, it is the opinion of the Court that the sinking of *150 Barge HTC-28 was caused by and the direct result of the unseaworthiness of Barge HTC-28 and failure to inspect properly HTC-28 for leakage and subsequent improper loading.
Plaintiff is seeking the following damages:

Able Commercial
 Divers Diver/Tender $ 312.00
Okie Moore Raised Barge 56,000.00
Art's Fleeting Assistance 1,275.00
Louisiana Dock
 Co. Temporary Repairs 2,725.82
St. Louis Ship Shift coils T-2063 419.25
Louisiana Dock Repairs to HTC-28 42,004.58
R. Kemmerer Survey 1,997.69
Weirton Steel Division Cargo Claim 27,229.45
 ___________
 TOTAL LOSS $131,963.79

Defendant Granite City Steel has objected to the damages listed for Okie Moore, Art's Fleeting, St. Louis Ship, and Weirton Steel Division. Granite City Steel also feels it should not be held responsible for repairs necessitated by the salvor dropping the coils during salvaging efforts. There have been no objections raised concerning the remaining damages.
The credible evidence is conflicting as to the agreed contract price between plaintiff and Okie Moore for the raising of the HTC-28. Plaintiff contends the contract price was $56,000, while defendant Granite City Steel argues it was $50,000. Several of the survey reports indicate that the salvage contract price was divided between the raising of another barge as well as the one in controversy. This cost would have been $20,000 for raising the other barge, T-2011, and $50,000 for raising barge HTC-28. Clark Henshaw noted on the Okie Barge invoice a split of $14,000 to T-2011 and $50,000 for the HTC-28. Plaintiff has the burden of proving, by a preponderance of the evidence, a contract price of $56,000. The Court finds that plaintiff has failed to meet its burden and a contract price of $50,000 will be allowed.
Plaintiff has also failed to support adequately a damage claim of $1,275 for tug service charges by Art's Fleeting Service. The Court finds the charges for towing the HTC-28 to Louisiana Dock to be proper but will disallow the charges incurred for transporting plaintiff's surveyor, Richard Kemmerer, to and from the salvage site. It is the customary practice for Okie Moore to transport the marine surveyor(s) to and from the salvage site. As Mr. Kemmerer could not supply any reason why he did not take advantage of this service, although well aware of it, only $225 will be allowed from the total billing by Art's Fleeting.
As to the charge of $419.25 by St. Louis Ship, the Court finds that plaintiff has failed to meet its burden. Plaintiff did not present any evidence of the necessity of this charge. The cost of shifting coils in T-2063 will be disallowed.
The Court further finds that the $27,229.45 payment to Weirton Steel for its cargo claim constitutes a voluntary payment. Section 10 of plaintiff's bill of lading clearly exempts plaintiff from liability for loss of cargo due to an improper loading of a third party. Plaintiff had then no legal duty to compensate Weirton Steel (i.e. before the proximate cause of the sinking had been established) and indicated in discovery, in any event, that it had done so to maintain good customer relations. The claim for payment to Weirton Steel will be disallowed.
The parties appear to agree that a certain amount of damage sustained by the HTC-28 is attributable to the dropping of several steel coils onto the barge during salvage efforts. Ordinarily plaintiff would not be entitled to recover for damages due to the negligent acts of the salvor or due to its own failure to take steps to mitigate further damage to the barge. Although the Court recognizes that plaintiff has a duty to mitigate its damages, the circumstances of this case prohibit the reduction of the repair bill paid to Louisiana Dock in the amount of $42,004.58. None of the evidence presented clearly distinguished between the damage sustained due to the sinking and the damage sustained due to the dropping of steel coils nor did the repair *151 bill separate the cost of repairs for the sinking from the cost of repairs for coils dropping onto the barge. Any reduction of the repair bill would be extremely speculative on the part of the Court.
The Court finds that plaintiff has met its burden respecting the other items of damage and those will be allowed.
The next issue to be addressed is the award of prejudgment interest against defendant Granite City Steel. The general rule in admiralty cases is that prejudgment interest should be awarded absent exceptional circumstances. Ohio River v. Peavey Co., 731 F.2d 547 (8th Cir. 1984); Ohio River v. Great Lakes Carbon Corp., 714 F.2d 63 (8th Cir.1983); Consolidated Grain and Barge Co. v. Archway Fleeting and Harbor Service, 712 F.2d 1287, 1290 (8th Cir.1983); Federal Barge Lines, Inc. v. Republic Marine, Inc., 616 F.2d 372, 373 (8th Cir.1980); Mid-American Transportation Co. v. Rose Barge Lines, 477 F.2d 914, 916 (8th Cir.1973). Prejudgment interest is to be computed from the time expenditures for repairs were actually made, i.e. the time of payment. Federal Barge Lines v. Republic Marine, at 373; Mid-American Transportation Co. v. Cargo Carriers, Inc., 480 F.2d 1071, 1074 (8th Cir.1973); Mid-American Transportation v. Rose Barge, at 916.
Although the rationale behind an award of prejudgment interest is restitution and full compensation, the setting of the prejudgment interest rate is discretionary with the court. Federal Barge Lines v. Republic Marine, at 373; U.S. v. M/V GOPHER STATE, 614 F.2d 1186, 1190 (8th Cir.1980); Mid-American Transportation v. Rose Barge, at 916; Ohio River v. Peavey, at 93. This Court is not bound by the forum state statutory interest rates. Id. It has been held in this circuit that the prejudgment interest rate should be fixed at a rate in keeping with prevailing rates at the time repairs were made. Ohio River v. Peavey, at 549; General Facilities, Inc. v. National Marine Service, Inc., 664 F.2d 672, 674 (8th Cir.1981); Federal Barge Lines v. Republic Marine, at 373-374; U.S. v. M/V GOPHER STATE, at 1190; Ohio River v. Peavey, at 93. These cases held that prevailing rates were a guide to the Court and that the Court should consider the prevailing rates along with the evidence adduced, in setting the prejudgment interest rate. Id.
Plaintiff has furnished the Court with an affidavit by an officer of the Finance Department of Mercantile Bank and Trust listing the weekly prime interest rates from June, 1979 until May, 1984. Defendant Granite City Steel does not object to the authenticity of this listing but rather strenuously objects to any award of prejudgment interest. Granite City Steel contends that the three and one half year "delay" between the sinking incident and the filing of the complaint by plaintiff, and the several amendments to the complaint, constitute an exceptional circumstance to justify not awarding prejudgment interest. Although a delay in bringing or prosecuting an admiralty suit may be considered as justification for denial of prejudgment interest, the Court finds no such exceptional circumstances present in this case. See, Mid-America Transportation v. Rose Barge Line, 477 F.2d 914, 916 (8th Cir. 1973). Plaintiff brought its suit within statutory time limits and it will not now be penalized for the amendments to its complaint that this Court had previously allowed.
Plaintiff's evidence demonstrates a prime interest rate which fluctuated greatly during the years 1979-1984. The prevailing interest rates, during these years, ranged from 11% to 20%. After reviewing plaintiff's evidence and considering the circumstances of the case, the Court finds that a rate of 12% per annum would fairly compensate the plaintiff.
Based upon the stated law and the Court's findings of fact, liability for the sinking of Barge HTC-28, is to be apportioned between plaintiff and defendant Granite City Steel at a ratio of 50% against plaintiff and 50% against defendant Granite City Steel. In light of this determination, *152 the Court will dismiss the cross-claim filed by defendant Granite City Steel against defendant Valley Line. The following are plaintiff's recoverable damages:

 Able Commercial Divers $ 312.00
 Okie Moore 50,000.00
 Art's Fleeting 225.00
 Louisiana Dock 2,725.82
 Louisiana Dock 42,004.58
 R. Kemmerer 1,997.69
 ___________
 TOTAL DAMAGES $ 97,265.09

Of this sum, defendant Granite City Steel, shall be responsible for $48,632.54 with interest at the rate of 12% per annum from the time damages were paid by plaintiff.